**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| FELICIA WRICE-SCOTT, individually and on behalf of all others similarly situated, | COMPLAINT – CLASS ACTION |
| Plaintiff, | DEMAND FOR JURY TRIAL |
| -against- | |
| GENERAL MOTORS LLC, | CASE NO. |
| Defendant. | |

## **INTRODUCTION**

1.          Defendant General Motors LLC ("GM") has recalled 600,000 trucks and SUVs following an investigation conducted by the National Highway Traffic Safety Administration ("NHTSA"). GM admitted that a major defect in its 6.2-liter V-8 engines caused catastrophic engine failure (the "Engine Defect"). GM now requires owners to start using higher-viscosity motor oil as part of a recall remedy. Thicker oil may (or may not) help mitigate the Engine Defect, but it will also materially decrease fuel economy and require owners to purchase hundreds of extra gallons of gasoline over their vehicles' lifespans.

2.          Thus, due to the underlying defect and GM's recall remedy, owners are presented with two bad options: do nothing, risk catastrophic engine failure, or get the recall and pay hundreds of dollars more for gasoline.

3.          Plaintiff Wrice-Scott, on behalf of herself and all others similarly situated (the "Classes"), brings this class action lawsuit to recover the economic damages they suffered from GM's misconduct and alleges the following against GM based, where applicable, on personal

knowledge, information and belief, public corporate admissions, and the pre-filing investigation of counsel.

## FACTUAL ALLEGATIONS

4.      On January 16, 2025, the National Highway Traffic Safety Administration ("NHTSA") and GM opened an investigation into failures in 6.2-liter V-8 engines equipped in certain GM trucks and SUVs.

5.      According to an "engine teardown analysis," there were two problems with the engines "(1) rod-bearing damage from sediment on connecting rods and crankshaft-oil galleries; and (2) out of specification crankshaft dimensions and surface finish"—both of which "are attributable to supplier manufacturing and quality issues." 25V-284 Safety Recall Report at 4. As a result of these defects, the engines were failing at an alarming rate. Indeed, the investigation "identified 28,102 field complaints or incidents . . . of which 14,332 involved allegations of loss of propulsion." *Id.* at 5.

6.      This is a serious safety issue. According to NHTSA's report, "[i]f the engine fails during vehicle operation, the vehicle will lose propulsion," which, perhaps obviously, "increase[es] the risk of a crash." *Id.*

7.       Given the seriousness of the defect and the high failure rates, GM was soon forced to admit it had a big problem on its hands. On April 28, 2025, just a few months after NHTSA opened its investigation, GM issued a complete stop-sale and recall.

8.      The scope of the recall is nationwide. It covers 597,630 GM vehicles in the U.S. equipped with a 6.2-liter V-8 engine (RPO L87; the "Class Engine"), including the model year 2021 – 2024 Cadillac Escalade and Escalade ESV; Chevrolet Silverado 1500, Suburban, and Tahoe; and GMC Sierra 1500, Yukon, and Yukon XL (the "Class Vehicles" or "Recalled

Vehicles"). *See* NHTSA April 28, 2025, Recall Letter.

9.        Every one of these nearly 600,000 Class Vehicles now must be delivered to an authorized dealer for an engine "inspect[ion]." It is not entirely clear what this inspection will entail, but, at a minimum, dealers will be checking for diagnostic code P0016, which indicates misalignment between the crankshaft and camshaft. Class Vehicles with that diagnostic code, and any others that fail inspection, will then be "quarantine[d]" for future engine repair or replacement. Recall Dealer Bulletin at 2. NHTSA estimates that approximately 3% of the population will require repair. 5V-284 Safety Recall Report at 1.

10.        Per the terms of the recall, Class Vehicles that pass the visual inspection—that is, those that will not receive immediate engine repair—will be outfitted with a new thicker viscosity oil filter and cap.

11.        According to GM, "the thicker viscosity oil offers an increased further level of protection" necessary to avoid future engine failures. Safety Recall FAQ, Answer 4. Or, put differently, without the thicker oil, the engines could seize up and fail.

12.        Whether the recall inspection program will actually identify all engines primed to fail or prevent future engine failures remains to be seen. But one thing is for sure—it will come at a significant cost to consumers.

13.        The reason is that thicker (higher viscosity) motor oil materially increases fuel consumption. "Thinner oils flow more easily, reducing resistance and allowing the engine to operate more smoothly. This translates to less energy—or fuel—required to pump the oil, which means improved fuel economy."[1] Thicker oils have the opposite effect and "hinder fuel efficiency."

---

[1] *The Impact of Oil Viscosity on Engine Performance*, Driven Racing Oil (Feb. 14, 2025), available at: https://www.drivenracingoil.com/blogs/news/the- impact-of-oil-viscosity-on-engine-performance.

*Id.*

14.    This is particularly true where, as here, GM is requiring consumers to use oil (0W-40) that is a full two grades thicker than the original (0W-20). As a point of reference, the dynamic viscosity of 0W-40 oil is more than 50% greater than that of 0W-20 oil at common operating temperatures.

15.    The precise degree of the fuel economy impact from using a higher viscosity motor oil depends on the specifics of the engine, but the differential between the lower-viscosity (0W-20) and higher-viscosity (0W-40) oil is generally understood to be at least 3-4%. A number of well-respected industry sources and academic studies confirms this.[2]

16.    This is likely to be an underestimate of the fuel economy deterioration in the recalled engines, in part because of their reliance on a technology called Dynamic Fuel Management ("DFM"). In short, at light loads, DFM deactivates certain cylinders and increases the load on the remaining cylinders, resulting in more favorable efficiency conditions. With the change to 0W-40 oil, the parasitic load (friction) in the engine is increased, thereby reducing the amount of cylinder deactivation (and fuel economy savings) potential. Thus, the fuel economy

---

[2] *See, e.g.*, Fernando Rovai, et al., *Engine Lubricant Impact in Light-Vehicle Fuel Economy: A Combined Numerical Simulation and Experimental Validation* (Mar. 22, 2025) (3% difference in fuel economy between 5W-40 and 5W-20), available at: https://www.mdpi.com/2075- 4442/13/4/137; Yimin Mo et al, *Study on the Influence of Low-Viscosity Engine Oil on Engine Friction and Vehicle Worldwide Harmonized Light Vehicles Test Cycle Fuel Economy* (Sept. 22, 2020) (2.08% fuel economy difference between 5W-30, which is less viscous than 0W-40, and 0W-20), available at: https://saemobilus.sae.org/papers/study-influence-low-viscosity-engine-oil- engine-friction-vehicle-worldwide-harmonized-light-vehicles-test-cycle-fuel-economy-2020-01-5062; Alexander Tullo, *Engine oil becomes critical as automakers look to boost gas mileage* (Feb. 3, 2019) (estimating 3% difference), available at: https://cen.acs.org/business/specialty- chemicals/Engine-oil-becomes-critical-automakers/97/i5.

depreciation in these engines is likely to materially exceed the standard 3-4%.[3]

17.    Regardless, even 3-4% can make a big difference. Take, for example, a 2024 Cadillac Escalade, with an estimated 16 MPG combined fuel economy. Over 120,000 miles,[4] the truck will need 7,500 gallons (120,000 miles / 16 mpg). With the thicker oil required by the recall, 16 MPG becomes 15.5 MPG (16 *0.97 = 15.5), which means the truck will now need 7,742 gallons to travel the same distance. That's an extra 242 gallons of gasoline. Assume a conservative $4/gallon for the premium gasoline recommended for this engine, and those extra gallons will cost owners almost $1,000.

18.    Testing will demonstrate the precise effects of the thicker oil required by the recall, but suffice it to say that the financial harm will be significant both on an individual and classwide basis.

19.    This significant increase in ownership cost would be material to any reasonable consumer. However, if there were any doubts about the importance of efficiency in today's motor vehicle market, GM's own advertising would dispel them. As shown in a few representative examples below, GM repeatedly touted the efficiency of the Class Engine and the Class Vehicles because it knew what all reasonable consumers know: gasoline is expensive, and money matters.

---

[3] Given the highly complex nature of modern engines and their calibrations, it is likely the change in motor oil will have other detrimental consequences, too, including impacts on drivability and torque.
https://www.rydellcadillac.com/blogs/3685/how-long-do-cadillacs-last ("The Cadillac Escalade ESV is among the top cars that can surpass 200,000 miles.").

[4] This, too, is a Defendant-friendly estimate. GM regularly markets the longevity and durability of the class vehicles, boasting that they can surpass even 200,000 of useful life. *See, e.g.*, https://www.cadillacatservice.com/blogs/3708/how-long-does-a-new-cadillac-typically-last ("A new Cadillac typically drives between 150,000 and 200,000 miles with proper maintenance.")





**6.2L V-8, L87**

## STRONG HERITAGE MEETS EFFICIENCY

The L87 builds upon the previous 6.2L L86 with integral components for Automatic Start/Stop capability and available Dynamic Fuel Management (DFM) for even greater efficiency. Efficient, robust technologies including Direction Injection, Variable Valve Timing, oil-jet piston cooling, and a two-stage oil pump continue to part of the 6.2L heritage.

GM full size truck L87 engine shown

# 6.2L V8 ENGINE

The standard 6.2L 420-hp[†] V8 is paired with an intelligent 10-speed automatic transmission that moves among gears in a smooth, efficient fashion. Engine technologies such as Continuously Variable Valve Timing, Direct Injection and Dynamic Fuel Management also help ensure this power plant's 460 lb-ft of torque[†] (623 Nm) is harnessed efficiently.



**6.2L V8 ENGINE**

- 420 Horsepower
- 460 lb-ft of Torque
- 10-Speed Automatic Transmission
- Dynamic Fuel Management
- EPA-Estimated 15 mpg City/19 mpg Highway for SLT, Denali and Denali Ultimate
- EPA-Estimated 14 mpg City/17 mpg Highway for AT4 and AT4X With Mud-Terrain Tires
- Standard on AT4X and Denali Ultimate
- Available on 4WD-Equipped SLT, AT4 and Denali

20.     Moreover, the Engine Defect and the decreased fuel efficiency have and will continue to depreciate the resale value of the Class Vehicles.

21.     Plaintiff brings this class action to recover the material economic losses she has suffered as a result of GM's misconduct.

6

22.     At issue are warranties GM provided Plaintiff and Class members for "repairs, including parts and labor, to correct any defect in materials or workmanship" in the Class Vehicles. For many Class Vehicles, the express warranty terms include 3 years/36,000 miles of "bumper to bumper" coverage and 5 years/60,000 miles for a Powertrain warranty covering the engine and related components.[5] The warranty term for Cadillac-branded Class Vehicles runs longer, at 4 years/50,000 miles for bumper to bumper coverage, and 6 years/70,000 miles for the Powertrain coverage.[6]

23.     The warranty terms became part of the basis of the bargain when Plaintiff and Class members purchased or leased their Class Vehicles.

24.     Plaintiff and each Class member have had sufficient direct dealings with either Defendant or its agents (including dealerships) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each Class member, on the other hand, as to the express and implied warranties described in the Claims for Relief below.

25.     Nonetheless, privity is not required here because Plaintiff and each Class member are intended third-party beneficiaries of contracts between Defendant and its dealers, and of its implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit consumers only.

## **THE PARTIES**

### I.    **Plaintiff**

26.     Plaintiff Felicia Wrice-Scott ("Plaintiff"), a citizen of Pennsylvania, residing in

---

[5] *See, e.g.*, https://www.gmc.com/owners/warranty-protection-plans; https://www.chevrolet.com/owners/warranty.
[6] *See, e.g.*, https://www.cadillac.com/ownership/warranty-repairs

Philadelphia, Pennsylvania, purchased a new 2023 Chevrolet Suburban – a "Class Vehicle" – on or around August 2022, from a dealer in Cherry Hill, NJ. Plaintiff decided to purchase the Class Vehicle based in part on GM's representations and omissions regarding the vehicle's reliability, performance, cost of ownership, and fuel economy. Plaintiff did not know that the Class Vehicle had a defect that could lead to catastrophic failure or that, in an effort to remedy the Engine Defect, GM would require owners to use a higher-viscosity motor oil that would materially decrease the vehicle's fuel economy. If Plaintiff had been aware of the Engine Defect or the consequences of the recall, Plaintiff would not have bought or would have paid less for the Class Vehicle. Furthermore, Plaintiff will have to pay more for fuel during her possession of the vehicle than she would have had it not contained the defect and achieved the represented fuel economy. Plaintiff has therefore suffered a concrete injury.

27.     On December 12, 2023 Plaintiff experienced engine problems with her Class Vehicle, which was repaired under warranty.

**II.    Defendant**

28.     **General Motors LLC ("GM LLC" or "GM")** is a Delaware limited liability company with its principal place of business located at 300 Renaissance Center, Detroit, Michigan, and its members are citizens of the States of Delaware and Michigan. GM LLC is registered to do business in Pennsylvania.[7] GM manufactures the Class Engine at its Tonawanda Propulsion manufacturing facility in Buffalo, New York.

## JURISDICTION & VENUE

29.     Jurisdiction is proper pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because at least one member of the proposed Class is of diverse citizenship from one

---

[7] https://file.dos.pa.gov/search/business.

Defendant, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

30.     GM LLC consented to general personal jurisdiction in courts in Pennsylvania by registering to do business in the state. 42 Pa. Cons. Stat. § 5301(a)(2)(i), (b) (2019); *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 128 (2023).

31.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events and/or omissions giving rise to the claims occurred in this District, and because GM caused harm to Class members residing in this District, including Plaintiff Wrice-Scott who resides within this District.

## CLASS ACTION ALLEGATIONS

32.     Plaintiff brings this lawsuit as a class action pursuant to Federal Rules of Civil Procedure 23 (b)(2), (b)(3), and/or (c)(4), on behalf of herself and all others similarly situated as members of the following Nationwide Class and Subclass (collectively, the "Classes"):

**Nationwide Class:** All persons and entities that purchased or leased a Class Vehicle in the United States.

**Pennsylvania Subclass:** All persons and entities residing in Pennsylvania that purchased or leased a Class Vehicle.

33.     Excluded from the Classes are:

a.     Defendant's officers, directors and employees; Defendant's affiliates and affiliates' officers, directors and employees; Defendant's distributors and distributors' officers, directors and employees; and

b.     Judicial officers and their immediate family members and associated court staff assigned to this case.

34.     Plaintiff reserves the right to amend the Class definitions if discovery and further investigation reveal that any Class should be expanded, reduced, divided into additional

subclasses or State classes under Rule 23(c)(5), or modified in any other way.

35.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used in individual actions alleging the same claims. This action may also, in the Court's discretion, be maintained as a class action with respect to particular common issues.

36.     This action has been brought and may be properly maintained on behalf of each of the Classes proposed herein under Federal Rule of Civil Procedure 23 and satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of its provisions.

## I.    Numerosity: Federal Rule of Civil Procedure 23(a)(1)

37.     The members of the Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. Plaintiff is informed and believes that there are approximately 600,000 Class Vehicles and at least as many members of the Class, as well as multiple hundreds or thousands of members in each State Class. The precise number and identities of Nationwide Class and State Class members may be ascertained from Defendant's records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

## II.    Commonality and Predominance: Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3)

38.     This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

a.     Whether Defendant engaged in the conduct alleged herein;

b.     Whether Defendant designed, advertised, marketed, distributed, leased, sold, or

otherwise placed Class Vehicles into the stream of commerce in the United States and Pennsylvania;

c.    Whether Defendant owed a duty to disclose the Engine Defect and fuel economy effects of the Recall.

d.    Whether Defendant misrepresented the Class Vehicles' true performance and fuel economy or the effects of Recall on performance and fuel economy;

e.    Whether Defendant's conduct violates consumer protection statutes, warranty laws, and other laws as asserted herein;

f.    Whether Plaintiff and the other Class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief; and

g.    Whether Plaintiff and the other Class members are entitled to damages and other monetary relief and, if so, in what amount.

### III.    Typicality: Federal Rule of Civil Procedure 23(a)(3)

39.    Plaintiff's claims are typical of the claims of the Class members whom they seek to represent under Fed. R. Civ. P. 23(a)(3) because Plaintiff and each Class member purchased or leased a Class Vehicle and were comparably injured through Defendant's wrongful conduct as described above. Plaintiff and the other Class members suffered damages as a direct proximate result of the same wrongful practices by Defendant. Plaintiff's claims arise from the same practices and courses of conduct that give rise to the claims of the other Class members.

40.    Plaintiff's claims are based upon the same legal theories as the claims of the other Class members.

### IV.    Adequacy: Federal Rule of Civil Procedure 23(a)(4)

41.    Plaintiff will fairly and adequately represent and protect the interests of the Class members as required by Fed. R. Civ. P. 23(a)(4). Plaintiff's interests do not conflict with the

interests of the Class members. Plaintiff has retained counsel competent and experienced in complex class action litigation, including vehicle defect and fuel economy litigation and other complex class action proceedings. Plaintiff intends to prosecute this action vigorously. Neither Plaintiff nor her counsel have interests that conflict with the interests of the other Class members. Therefore, the interests of the Class members will be fairly and adequately protected.

## V.    Declaratory and Injunctive Relief: Federal Rule of Civil Procedure 23(b)(2)

42.    Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class as a whole.

## VI.    Superiority: Federal Rule of Civil Procedure 23(b)(3)

43.    A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in its management. The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, such that it would be impracticable for members of the Class to individually seek redress for Defendant's wrongful conduct.

44.    Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## ANY APPLICABLE STATUTES OF LIMITATION ARE TOLLED

## I.    Discovery Rule Tolling

45.    For the following reasons, any otherwise-applicable statutes of limitation have

been tolled by the discovery rule with respect to all claims.

46.     Through the exercise of reasonable diligence, and within any applicable statutes of limitation, Plaintiff and members of the proposed Class could not have discovered that Defendant was concealing and misrepresenting the Engine Defect, including its eventual effect on fuel economy.

47.     Until the recall was announced on April 28, 2025, Plaintiff and the other Class members could not have reasonably discovered, and did not know of facts that would have caused a reasonable person to suspect, that Class Vehicles included defective engine components that could lead to catastrophic failure or that a recall to address the defect would result in degraded fuel economy.

## II.    Tolling Due to Fraudulent Concealment

48.     Throughout the relevant time period, all applicable statutes of limitation have been tolled by Defendant's knowing and active fraudulent concealment of the facts alleged in this Complaint.

49.     Upon information and belief, prior to the date of this Complaint, Defendant knew of the manufacturing issues underlying the Engine Defect and its consequences for fuel efficiency but continued to allow Plaintiff and Class members to purchase and operate their Class Vehicles. In so doing, Defendant concealed and/or failed to notify Plaintiff and Class members about the true nature of the Class Vehicles.

50.     Instead of disclosing its deception, Defendant falsely represented the Class Vehicles' characteristics and performance.

51.     Therefore, any otherwise applicable statutes of limitation have been tolled by Defendant's exclusive knowledge and active concealment of the facts alleged herein.

### III.    <u>Estoppel</u>

52.      Defendant was and is under a continuous duty to disclose to Plaintiff and Class members the true character, quality, and nature of the Class Vehicles, including any defects and the consequences of mitigating those defects.

53.      Although Defendant had the duty to disclose to Plaintiff and Class members that it had engaged in the misconduct described in this Complaint, Defendant did not disclose the Engine Defect in Class Vehicles until the recall, and even then, did not disclose the effect the remedy would have on fuel economy. Defendant actively concealed the true character, quality, and nature of the Class Vehicles, and made misrepresentations about the quality, reliability, characteristics, and/or performance of the Class Vehicles. Plaintiff and Class members reasonably relied upon Defendant's knowing and active concealment of these facts.

54.      Based on the foregoing, Defendant is estopped from relying on any statutes of limitations in defense of this action.

### <u>CAUSES OF ACTION</u>

### <u>COUNT I:</u>
### COMMON LAW FRAUD BY CONCEALMENT
### (On Behalf of Plaintiff and the Nationwide Class)

55.      Plaintiff re-alleges and incorporates by reference all paragraphs as though fully set forth herein.

56.      Plaintiff brings this claim on behalf of herself and the Nationwide Class under Pennsylvania law or, in the alternative, under the laws of all fifty states against Defendant. In the alternative, Plaintiff brings claims on behalf of the Pennsylvania Subclass under Pennsylvania law against Defendant.

57.      Defendant is liable for both fraudulent concealment and nondisclosure. *See*, *e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

58.     Specifically, in the various channels of information through which Defendant sold and marketed Class Vehicles, Defendant committed fraud by concealing the Engine Defect and the effects thereof, including that a remedy would lead to worse fuel economy and higher operating costs.

59.     A reasonable customer would not have expected that their Class Vehicles contained the Engine Defect.

60.     Defendant knew that these facts about the Class Vehicles would be important to customers deciding to purchase or lease them. Defendant ensured that Plaintiff and the Classes did not discover this information by actively concealing it. Defendant intended for Plaintiff and the Classes to rely on its misrepresentations and omissions—which they did by paying for the Class Vehicles.

61.     Defendant had a duty to disclose the Engine Defect. The important facts were known and/or accessible only to the Defendant, including due to its involvement in the design, installment, and testing of the Class Engine. Defendant also knew that these technical facts were not known to or reasonably discoverable by Plaintiff and the Classes.

62.     Defendant also had a duty to disclose the true nature of the Class Vehicles in light of its affirmative statements about the Class Vehicles with respect to reliability and fuel economy.

63.     Defendant knew these statements were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the Engine Defect.

64.     Defendant's deceptive actions harmed Plaintiff and the Classes. Because Defendant fraudulently concealed the truth about the Class Vehicles, customers who paid for the Class Vehicles suffered economic losses. Plaintiff suffered damages including but not limited to

overpaying for vehicles that did not perform as represented and reasonably expected and paying for additional gasoline over the Class Vehicles' lifespan. Accordingly, Defendant is liable to Plaintiff and the Classes for damages in an amount to be proven at trial.

65.     Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the rights of Plaintiff and the Classes; and to enrich itself. Its misconduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

**COUNT II**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Nationwide Class)**

66.     Plaintiff re-alleges and incorporates by reference all paragraphs as though fully set forth herein.

67.     Plaintiff brings this claim on behalf of herself and the Nationwide Class under Pennsylvania law or, in the alternative, under the laws of all fifty states against Defendant. In the alternative, Plaintiff brings claims on behalf of the Pennsylvania Subclass under Pennsylvania law against Defendant.

68.     Defendant caused damages to Plaintiff and the Classes by its conduct. Plaintiff and the Classes conferred a benefit on Defendant by overpaying for Class Vehicles at prices that were artificially inflated by Defendant's misrepresentations, concealment, and omissions alleged above regarding the true nature of the Class Vehicles.

69.     As a result of Defendant's deception and omissions, Plaintiff and members of the Classes were not aware of the true facts concerning the Class Vehicles.

70.     Plaintiff and members of the Classes did not benefit from the Defendant's misconduct.

71.     Defendant knowingly benefited from its unjust conduct. It sold and leased the

Class Vehicles for more than what the vehicles were worth, and/or accepted the inflated benefits from the sale and lease of the Class Vehicles, at the expense of Plaintiff and the Classes.

72.      Plaintiff and the Classes conferred tangible and material economic benefits upon Defendant when they purchased or leased the Class Vehicles. Defendant profits from sales and leases of Class Vehicles, including through GM's authorized dealership network.

73.      Defendant readily accepted and retained these benefits from Plaintiff and the Classes. Plaintiff and the Classes would not have purchased or leased the Class Vehicles, or would have paid less for them, had they known the truth about these vehicles at the time of purchase or lease. Therefore, Defendant profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiff and the Classes.

74.      It is inequitable and unconscionable for Defendant to retain these benefits because they sold defective vehicles, concealed the Engine Defect, and issued a recall that will degrade the Class Vehicles' fuel economy and other characteristics.  Plaintiff and members of the Classes would not have purchased or leased the Class Vehicles or would have paid less for them, had Defendant not engaged in these misrepresentations, concealment, and omissions.

75.      Plaintiff and the Classes do not have an adequate remedy at law.

76.      Equity cannot in good conscience permit Defendant to retain the benefits that it derived from Plaintiff and the Classes through unjust and unlawful acts, and therefore restitution or disgorgement of the amount of Defendant's unjust enrichment is necessary.

77.      Plaintiff pleads this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3).

## <u>COUNT III</u>
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
## UNIFORM COMMERCIAL CODE)
### (On Behalf of Plaintiff and the Nationwide Class)

78.     Plaintiff re-alleges and incorporates by reference all paragraphs as though fully set forth herein.

79.     Plaintiff brings this claim on behalf of herself and the Nationwide Class under Pennsylvania law or, in the alternative, under the laws of all fifty states, against Defendant. All states (except Louisiana, which has its own analog) have adopted Uniform Commercial Code § 2-314, which provides that every contract for sale includes an implied warranty that the goods are merchantable. This common question of merchantability is the essence of an implied warranty claim and predominates over any potential differences among the states' individual implied warranty laws.

80.     In the alternative, Plaintiff brings claims on behalf of the Pennsylvania Subclass under Pennsylvania law against Defendant.

81.     Defendant is liable for breach of the implied warranty of merchantability. *See, e.g.*, U.C.C. §§ 2-314, 2A-212.

82.     Defendant is and was at all relevant times a "merchant" and a "seller" of vehicles under U.C.C. § 2-314.

83.     With respect to leases, Defendant is and was at all relevant times a "lessor" of vehicles under U.C.C. § 2A-212.

84.     The Class Vehicles are and were at all relevant times "goods" within the meaning of U.C.C. § 2-314 and § 2A-212.

85.     Warranties that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used are implied by law pursuant to U.C.C. § 2-314

18

and § 2A-212.

86.     These Class Vehicles, when sold or leased and at all times thereafter, contained a serious Engine Defect that can lead to catastrophic engine failure and attendant safety risks. The Class Vehicles were therefore not merchantable, not fit for the ordinary purpose for which vehicles are used, and did not conform to the promises or affirmations of fact made on their labels.

87.     As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiff and Nationwide Class members have been damaged in an amount to be proven at trial.

<u>COUNT IV</u>
**VIOLATIONS OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES
AND CONSUMER PROTECTION LAW, 73 P.S. § 201-1 *ET SEQ*.)
(On Behalf of Plaintiff and the Pennsylvania Subclass)**

88.     Plaintiff incorporates by reference all allegations in this Complaint as though fully set forth herein.

89.     Plaintiff brings this claim on behalf of herself and the Pennsylvania Subclass against Defendant.

90.     Plaintiff, Defendant, and the Pennsylvania Subclass are "persons" within the meaning of 73 P.S. § 201-2(2).

91.     Defendant engaged in "trade" or "commerce" within the meaning of 73 P.S. § 201-2(3).

92.     The Pennsylvania Unfair Trade Practices Act ("Pennsylvania UTPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." 73 P.S. § 201 3.

93.     In the course of its business, Defendant concealed and suppressed material facts concerning the Class Vehicles, including the Engine Defect and the effect of the recall to remedy the Engine Defect.

94.    Plaintiff and Pennsylvania Subclass members had no way of discerning that Defendant's representations were false and misleading because Pennsylvania Subclass members did not have access to Defendant's internal testing and complaint data and analysis.

95.    Defendant thus violated the Act by, at minimum: representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard, quality, and grade when they are not; advertising Class Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

96.    Defendant intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead the Pennsylvania State Class.

97.    Defendant knew or should have known that its conduct violated the Pennsylvania UTPA.

98.    Defendant owed the Pennsylvania Subclass a duty to disclose the illegality and public health risks, the true nature of the Class Vehicles, because Defendant:

      a.    possessed exclusive knowledge that it was manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

      b.    intentionally concealed the foregoing from Pennsylvania Sublass members; and/or

      c.    made incomplete representations about the Class Vehicles' characteristics, performance, and fuel economy while purposefully withholding material facts that contradicted these

representations.

99.     Defendant's concealment of the Class Vehicles' true characteristics, performance, and fuel economy was material to the Pennsylvania Subclass.

100.     Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and the Pennsylvania Subclass, about characteristics, performance, and fuel economy of the Class Vehicles, the quality of the Defendant's brands, and the true value of the Class Vehicles.

101.     Defendant's violations present a continuing risk to the Pennsylvania Subclass as well as to the general public, particularly given the increased risk of vehicle crash posed by the Engine Defect. Defendant's unlawful acts and practices complained of herein affect the public interest.

102.      Plaintiff and Pennsylvania Subclass members suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's misrepresentations and concealment of and failure to disclose material information. Defendant had an ongoing duty to all its customers to refrain from unfair and deceptive practices under the Pennsylvania UTPA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendant's deceptive and unfair acts and practices made in the course of Defendant's business.

103.     As a direct and proximate result of Defendant's violations of the Pennsylvania UTPA, Pennsylvania Subclass members have suffered injury-in-fact and/or actual damage.

104.     Pursuant to 73 P.S. § 201-9.2(a), Plaintiff and the Pennsylvania Subclass seek an order enjoining Defendant's unfair and/or deceptive acts or practices, damages, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the Pennsylvania UTPA.

**COUNT V**
**BREACH OF EXPRESS WARRANTY,**
**13. PA. CONS. STAT. §§ 2313 AND 2A210)**
**(On Behalf of Plaintiff and the Pennsylvania Subclass)**

105.    Plaintiff incorporates by reference all allegations in this Complaint as though fully set forth herein.

106.    Plaintiff brings this claim on behalf of herself and the Pennsylvania Subclass against Defendant.

107.    Defendant is and was at all relevant times a "merchant" with respect to motor vehicles under 13 Pa. Cons. Stat. §§ 2104 and 2A103(a), and a "seller" of motor vehicles under § 2103(a).

108.    With respect to leases, Defendant is and was at all relevant times a "lessor" of motor vehicles under 13 Pa. Cons. Stat. § 2A103(a).

109.    The Class Vehicles are and were at all relevant times "goods" within the meaning of 13 Pa. Cons. Stat. §§ 2105(a) and 2A103(a).

110.    In connection with the purchase or lease of each one of its new GMC and Chevrolet vehicles, Defendant provided an express warranty for a period of 3 years/36,000 miles of "bumper to bumper" coverage and 5 years/60,000 miles for a Powertrain warranty covering the engine and related components. For each one of its new Cadillac-branded vehicles, Defendant provided an express warranty for a period of 4 years/50,000 miles for bumper to bumper coverage, and 6 years/70,000 miles for the Powertrain coverage. These warranties exist to provide "repairs, including parts and labor, to correct any defect in materials or workmanship" in the Class Vehicles.

111.    Defendant also made numerous representations, descriptions, and promises to Pennsylvania Subclass members regarding the performance and efficiency of their vehicles.

112.    Defendant's warranties formed a basis of the bargain that was reached when

22

consumers purchased or leased Class Vehicles.

113.    Despite the existence of warranties, Defendant failed to inform Plaintiff and Pennsylvania Subclass members that the Class Vehicles contained a serious Engine Defect that can lead to catastrophic engine failure and attendant safety risks.

114.    Defendant breached the express warranty promising to repair and correct Defendant's defect in materials and workmanship. Defendant has not repaired or adjusted, and has been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

115.    Affording Defendant a reasonable opportunity to cure its breach of written warranties would be unnecessary and futile here.

116.    Furthermore, the limited warranty promising to repair and correct Defendant's defects in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make Pennsylvania Subclass members whole and because Defendant has failed and/or refused to adequately provide the promised remedies within a reasonable time.

117.    Accordingly, recovery by Plaintiff and Pennsylvania Subclass members is not restricted to the limited warranty promising to repair and correct Defendant's defect in materials and workmanship, and they seek all remedies as allowed by law.

118.    Also, as alleged in more detail herein, at the time Defendant warranted and sold or leased the Class Vehicles, it knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Defendant wrongfully and fraudulently concealed material facts regarding the Class Vehicles. Pennsylvania Subclass members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

119.    Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendant's defects in materials

and workmanship as many incidental and consequential damages have already been suffered because of Defendant's misconduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on the Pennsylvania Subclass members' remedies would be insufficient to make them whole.

120.      Finally, because of Defendant's breach of warranty as set forth herein, Pennsylvania Subclass members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to them of the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

121.      Defendant was provided reasonable notice of these issues by way of its own internal testing and complaint data and analysis, the regulatory recall, and a pre-suit notice letter from Plaintiff sent concurrently with the filing of this Complaint.

122.      As a direct and proximate result of Defendant's breach of express warranties, Pennsylvania Subclass members have been damaged in an amount to be determined at trial.

<u>COUNT VI</u>
**IMPLIED WARRANTY OF MERCHANTABILITY**
**13. PA. CONS. STAT. §§ 2314 AND 2A212)**
**(On Behalf of Plaintiff and the Pennsylvania Subclass)**

123.      Plaintiff re-alleges and incorporates by reference all paragraphs as though fully set forth herein.

124.      Plaintiff brings this claim on behalf of herself and the Pennsylvania Subclass against Defendant.

125.      Defendant is and was at all relevant times a "merchant" with respect to motor vehicles under 13 Pa. Cons. Stat. §§ 2104 and 2A103(a), and a "seller" of motor vehicles under§ 2103(a).

126.      With respect to leases, Defendant is and was at all relevant times a "lessor" of

24

motor vehicles under 13 Pa. Cons. Stat. § 2A103(a).

127.     The Class Vehicles are and were at all relevant times "goods" within the meaning of 13 Pa. Cons. Stat. §§ 2105(a) and 2A103(a).

128.     A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to 13 Pa. Cons. Stat.§§ 2314 and 2A212.

129.     These Class Vehicles, when sold or leased and at all times thereafter, contained a serious Engine Defect that can lead to catastrophic engine failure and attendant safety risks. The Class Vehicles were therefore not merchantable, not fit for the ordinary purpose for which vehicles are used, and did not conform to the promises or affirmations of fact made on their labels.

130.     Defendant was provided reasonable notice of these issues by way of its own internal testing and complaint data and analysis, the regulatory recall, and a pre-suit notice letter sent by Plaintiff concurrently with the filing of this Complaint.

131.     As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Pennsylvania Subclass members have been damaged in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendant on each of the above-referenced claims and Causes of Action and as follows:

    a.     An order certifying the Nationwide and Pennsylvania Subclass under the applicable provisions of Rule 23; appointing and designating the Plaintiff to serve as a representative of the Nationwide Class and/or Pennsylvania Subclass; and appointing the undersigned attorneys to serve as Class Counsel;

b.      An order temporarily and permanently enjoining Defendant from continuing the unlawful, deceptive, fraudulent, harmful, and unfair business conduct and practices alleged in this Complaint;

c.      Relief in the form of a comprehensive program to fully reimburse and make whole all Class members for all costs and economic losses that resulted from the misconduct described herein;

d.      A declaration that Defendant is financially responsible for all Class notices and the administration of Class relief;

e.      Costs, restitution, compensatory damages for economic loss and out-of-pocket costs, multiple damages under applicable states' laws, punitive and exemplary damages under applicable law; and disgorgement, in an amount to be determined at trial;

f.      Rescission of all Class Vehicle purchases or leases, including reimbursement and/or compensation of the full purchase price of all Class Vehicles, including taxes, licenses, and other fees;

g.      Any and all applicable statutory and civil penalties;

h.      An order requiring Defendant to pay both pre- and post-judgment interest on any amounts awarded;

i.      An award of costs and attorneys' fees, as allowed by law;

j.      Leave to amend this Complaint to conform to the evidence produced at

trial; and

k.      Such other or further relief as the Court may deem appropriate, just, and equitable.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any

and all issues in this action so triable of right.

Dated: May 21, 2025                          Respectfully submitted,

/s/ *Kevin Laukaitis*
Kevin Laukaitis
(PA ID #321670)
Dan Tomascik*
**LAUKAITIS LAW LLC**
954 Avenida Ponce De Leon
Suite 205, #10518
San Juan, PR 00907
T: (215) 789-4462
klaukaitis@laukaitislaw.com
dtomascik@laukaitislaw.com

Mason A. Barney*
Lisa R. Considine*
Leslie L. Pescia*
**SIRI | GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, NY 10151
T: (212) 532-1091
F: (646) 417-5967
mbarney@sirillp.com
lconsidine@sirillp.com
lpescia@sirillp.com

*Pro Hac Vice Forthcoming*

Attorneys for Plaintiff and
the Putative Classes